

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| RONALD CHISOM, et al.,<br>    Plaintiffs, | §<br>§<br>§ | CIVIL ACTION NO.: 86-4075 |
| UNITED STATES OF AMERICA,<br>    Plaintiff-Intervenor, | §<br>§<br>§ | |
| BERNETTE J. JOHNSON,<br>    Plaintiff-Intervenor | §<br>§<br>§ | SECTION A |
| Versus | §<br>§ | |
| PIYUSH ("BOBBY") JINDAL, et al.,<br>    Defendants | §<br>§ | MAGISTRATE _____ |

## PLAINTIFF-INTERVENOR BERNETTE J. JOHNSON'S MOTIONS: (1) TO REOPEN CASE, (2) TO JOIN AS DEFENDANTS JUSTICES KIMBALL, VICTORY, KNOLL, WEIMER, GUIDRY, AND CLARK OF THE LOUISIANA SUPREME COURT (3) FOR CONTEMPTAGAINST JUSTICES KIMBALL, WEIMER, GUIDRY AND CLARK

NOW COMES Plaintiffs and Plaintiff-Intervenor in this matter, with their Motion to Reopen the above-captioned case, join as defendants Louisiana Supreme Court Justices Kimball, Victory, Knoll, Weimer, Guidry, and Clark, and for a finding of contempt against Justices Kimball, Weimer, Guidry, and Clark for violating the Consent Judgment, agreed to by all parties in this action and ordered by this Court on August 21, 1992 and amended January 3, 2000 (hereinafter "Consent Judgment"). The Justices have violated the final and binding terms of the

Consent Judgment by refusing to acknowledge Plaintiff-Intervenor Justice Johnson's years of service on the Louisiana Supreme Court from 1994-2000 when she served on the Court pursuant to the terms of the Consent Judgment (the "Chisom judge"). The Justices' failure to acknowledge Justice Johnson's seniority violates several terms of the Consent Judgment, including terms that she is entitled to the same benefits and emoluments as the other justices, has the same duties and powers as the other justices, and that the years spent as the Chisom judge shall be credited to her tenure.

When considering her total years of service on the Louisiana Supreme Court, Justice Johnson is the second oldest in point of service on the court and, therefore, she is next in line to become Chief Justice of the Louisiana Supreme Court upon the retirement of current Chief Justice Kimball in January, 2013. Through their efforts, Defendants seek to deny Justice Johnson the position of Chief Justice, in direct violation of the terms of the Consent Judgment.

This Motion is based on the Motion, the Memorandum of Points and Authorities in Support Thereof, the Declarations of Bernette J. Johnson and Marc Morial, and any further documents, evidence, or argument submitted or made in support of this Motion.

Plaintiff-Intervenor would show the following:

## BACKGROUND

1.

Plaintiffs and Intervenor in Chisom v. Edwards[1] asserted the at-large method of electing justices from the First Supreme Court judicial district impermissibly diluted minority voting strength, violating Section 2 of the Voting Rights Act 1965, and the Fourteenth and Fifteenth Amendments of the United States Constitution.

2.

---

[1] 839 F.2d 1056 (5th Cir. 1988), cert denied sub nom. Roemer v. Chisom, 488 U.S. 955, 109 S. Ct. 390 (1988).

After years of litigation and in an effort to remedy the Section 2 violations raised in the Plaintiffs' complaint, as a final settlement of this liitgaiton, a federal Consent Judgment was signed on August 21, 1992, by all parties to this litigation(including the intervenors on behalf of The United States of America) U.S. District Court for the Eastern District of Louisiana. The plain language of the Consent Judgment provides *"the relief contained in the consent judgment will ensure that the system for electing the Louisiana Supreme Court is in compliance with Section 2 of the Voting Rights Act."*

3.

The Consent Judgment reflected the desire of all parties to *"effect a settlement of the issues raised by the [plaintiffs] complaint and subsequent proceedings without the necessity of further litigation, and therefore [the parties] consent[ed] to entry of the ... final and binding judgment as dispositive of all issues raised in the case."*

4.

The provisions numbered C.1.-C.8. outlined in the Consent Judgment provide as follows:

> C.1. [t]here shall be a Supreme Court district comprised solely of Orleans Parish for the purpose of electing a Supreme Court justice from that district when and if a vacancy occurs in the present First Supreme Court District prior to January 1, 2000;
>
> C.2. [t]here shall be one new Fourth Circuit Court of Appeal Judicial position. The Louisiana Supreme Court shall assign the judge elected to fill this new position immediately to the Louisiana Supreme Court pursuant to its authority under La. Const. Art. V, Section 5(A);
>
> C.3. [t]he Fourth Circuit Court of Appeal judge assigned to serve on the Supreme Court **shall receive the same compensation, benefits, expenses, and emoluments of offices as now or hereafter** are provided by law for a justice of the Louisiana Supreme Court.
>
> C.4. [t]he Fourth Circuit Court of Appeal Judge assigned to serve on the Supreme Court **shall participate and share equally**

*in the cases, duties, and powers of the Louisiana Supreme Court. ...The assigned judge and the seven Supreme Court justices **shall** **participate and share equally in all other duties and powers of the Supreme Court, including, but not limited to, those powers set forth by the Louisiana Constitution, the laws of Louisiana, and the Louisiana Rules of Court.*

C.5. [t]he additional judicial position for the Fourth Circuit Court of Appeal described in paragraphs C.2-C.4 of this Consent Judgment shall expire automatically on the date that a justice takes office subsequent to being elected in an elected called from a Supreme Court district composed of Orleans Parish in accordance with paragraphs C.1. and C.7. of this Consent Judgment.

C.6 [i]f the additional judicial position for the Fourth Circuit Court of Appeal described in paragraphs C.2-C.4. of this Consent Judgment becomes vacant for any reason prior to the expiration of the seat in accordance with paragraph C.5 of this Judgment, the Governor shall call a special election to fill that position so that the special election coincides with the next regularly scheduled presidential, gubernatorial, congressional, New Orleans mayoral, state legislative, New Orleans city council, or Orleans Parish school board election.... The Louisiana Supreme Court shall assign the judge elected to fill a vacancy in this judicial position immediately to the Louisiana Supreme Court pursuant to its authority under La. Const. Art. V, Section 5(A), and the provisions of paragraphs C.3.-C.5.of this Consent Judgment shall govern the judge's tenure on the Louisiana Supreme Court.

C.7. [i]f a vacancy occurs in the presently existing First Supreme Court District for any reason prior to January 1, 2000, the vacant first district Supreme Court position shall be immediately assigned to the Supreme Court district described in Paragraph C.1. of this Consent Judgment that is composed solely of Orleans Parish...;

C.8. [l]egislation will be enacted in the 1998 regular session of the Louisiana Legislature which provides for the reapportionment of the seven districts of the Louisiana Supreme Court in a manner that complies with the applicable federal voting law, taking into account the most recent census data available. The reapportionment will provide for a single member district that is majority black in voting age population that includes Orleans Parish in its entirety. The reapportionment shall be effective on

*January 1, 2000, and future Supreme Court elections after the effective date shall take place in the newly reapportioned districts.*

5.

Importantly, the Consent Judgment re-ordered the structure of the Supreme Court. Section F declared that the aforementioned remedies would serve as *"a restructuring of the Supreme Court of Louisiana by federal court order within the meaning of Act No. 1063 of 1991 (R.S. 11:558 (A)(5)), and the benefits of R.S. 11:558(A)(5)(a)(ii) shall be available to current members of the Court."*[2]

6.

Furthermore, Section J of the Consent Judgment affirmed defendants' intent to uphold the provisions of the Consent Judgment, reading *"[t]he parties agree to take all necessary steps to effectuate this decree."* Finally, Section K maintains the United States District Court for the Eastern District of Louisiana *"shall retain jurisdiction over this case until the complete implementation of the final remedy has been accomplished."*

7.

The Consent Judgment was amended in 2000 to incorporate Louisiana Act No. 776 ("Act 776) in its entirety. Among other things, Act 776 provides that *"[a]ny tenure on the supreme court gained by the [Chisom] judge while so assigned to the supreme court shall be credited to such judge.*

---

[2] The Chisom Consent Judgment tracked the language of a bill that was signed into law by Governor Edwards on June 22, 1992 and became Act 512 of the 1992 legislative session. Act 512 contained two particular remedial measures. First, a supreme court district consisting of Orleans Parish was created, which would elect a justice to the supreme court on January 1, 2000, or earlier, if a vacancy were created in the district; and then the Louisiana legislature was required to reapportion the supreme court into 2 single-member districts in the 1998 Regular Session, based on then current census data. Importantly, the second remedial measure provided that pursuant to Article V, Section 5(A) of the Louisiana Constitution, the judge assigned from the Fourth Circuit to the Louisiana Supreme Court "*shall participate and share equally in the cases and duties of the justices of the supreme court*" and "*shall receive the same compensation, benefits, expenses, and emoluments of office as are now or as may hereafter be provided by law for justices of the Louisiana Supreme Court.*"

## **STATEMENT OF FACTS**

8.

Upon the expiration of the <u>Chisom</u> Seat in 2000, Justice Johnson was re-elected to the Supreme Court of Louisiana, this time from District 7, which was re-drawn to comply with the Consent Judgment. In 2010, Justice Johnson was elected again to the Supreme Court, without opposition. Justice Johnson has now served seventeen (17) consecutive and continuous years on the Louisiana Supreme Court. During her seventeen (17) year tenure on the Supreme Court, Justice Johnson has always participated in oral arguments, issued orders, and presided over various administrative duties as an associate justice.

9.

Justice Catherine D. Kimball was elected to the Supreme Court of Louisiana on December 31, 1992. Justice Kimball was re-elected to the Supreme Court on January 13, 2009 and presently serves as the court's Chief Justice. In January 2010, Chief Justice Kimball suffered a debilitating stroke that required her to take an extended leave of absence from the Court.

10.

As the second most senior justice on the Court, Justice Johnson assumed the duties incumbent upon the Chief Justice in Justice Kimball's absence. These duties include, but are not limited to: (1) convening and presiding over oral arguments, (2) presiding over administrative and writ conferences, (3) supervising judicial and administrative staff; and (4) representing the Court in budgetary conferences with the State Legislature. Justice Johnson continued to perform many of the aforementioned Chief Justice duties on the Court's behalf even after Justice Kimball returned from her extended leave of absence. Not once during her leave from the Louisiana

Supreme Court, or upon her return, did Chief Justice Kimball object to Justice Johnson serving in the capacity of Acting or Interim Chief Justice. Further, neither Justice Victory nor Justice Knoll served in this capacity, challenged Justice Johnson's ability to do so, or shared in any of the Chief Justice administrative duties.

11.

On May 8, 2012, Chief Justice Kimball tendered a letter of retirement to Louisiana Secretary of State, Jerry Schedler, pursuant to La. Rev. Stat. § 18:652. Justice Kimball's retirement from the Court is effective January 31, 2013.

12.

Chief Justice Kimball and Justice Victory convened an informal meeting with Justice Johnson to discuss succession to Chief Justice in January 2013. Chief Justice Kimball expressed her opinion that Justice Johnson was not successor to the office of Chief Justice because her service between 1994-2000, while she served on the Court pursuant to the terms of the Consent Judgment, was as a Fourth Circuit Judge.

13.

The Louisiana Constitution Art. 5, §6 governs the determination of which Justice becomes Chief Justice of the Louisiana Supreme Court. It states, *"[t]he judge oldest in point of service on the supreme court shall be chief justice. He (or she) is the chief administrative officer of the judicial system of the state, subject to rules adopted by the court."*

14.

On the morning of June 12, 2012, Justice Johnson transmitted a letter via email notifying the court employees that since the State Constitution declares *"the judge oldest in point of*

*service on the Supreme Court shall be chief justice*" she would be establishing a transition team and scheduling meetings with each Department Head to discuss the operations at the Court.

15.

On the afternoon of that same day, June 12, 2012, at the court's administrative conference, Justices Kimball, Victory, Knoll, Weimer, Guidry, and Clark attempted to invoke a discussion of who would become Chief Justice. Justice Johnson announced that the defendant Justices had no authority to select or elect a Chief Justice.

16.

Without any pending case or controversy, and under no other color of law, Chief Justice Kimball on behalf of herself and Justices Weimer, Guidry, and Clark, issued on border of June 13, 2012 purporting to initiate proceedings in the Louisiana Supreme Court to determine who is the "*judge oldest in point of service on the supreme court.*" The Order states:

> *[C]ontrary legal positions have been expressed on the issue of who will succeed to the office Chief Justice of the Louisiana Supreme Court upon the retirement of present Chief Justice Catherine D. Kimball on January 31, 2012. And further considering that the administration of justice requires a legal determination of who will assume the position of Chief Justice on February 1, 2012.*

The Order further provides that:

> *[a]ny sitting Justice interested in legal determination of this matter may file with the Clerk of Court, no later than July 31, 2012, on the following issue: In consideration of Chief Justice Catherine D. Kimball's retirement on January 31, 2013, for purposes of determining who is Chief Justice of the Louisiana Supreme Court as of February 1, 2013, which Justice is the "the judge older in point of service on the supreme court" under Article V, Sec. 6 of the Louisiana Constitution of 1974.*
>
> *Factual matters, if any, shall be submitted by affidavit filed with the Clerk of Court no later than July 31, 2012. Any responses by a*

> *sitting Justice shall be filed with the Clerk of Court by August 15, 2012. This matter shall be assigned for written opinion.*

*In re Office of Chief Justice, Louisiana Supreme Court*, No. 12-O-1342 (June 13, 2012), Justice Victory recused himself and Justices Johnson and Knoll were deemed recused. Id.

17.

The U.S. District Court for the Eastern District of Louisiana is the court in which the Consent Judgment was entered and enforced, and it is the only Court that has jurisdiction over any interpretation of this Consent Judgment. To be clear, the issue before this Court now is simply whether the Consent Judgment gave Justice Johnson credit for her service on the Louisiana Supreme Court beginning in 1994. In order for the Louisiana Supreme Court to decide this question, however, the Louisiana Supreme Court will necessarily usurp this federal court's absolute, sole, and binding authority over interpretation of the Consent Judgment and Justice Johnson's service in office. This attempted seizure of federal jurisdiction by the Louisiana Supreme Court is the basis of and Plaintiff-Intervenor's motions, and must not be allowed.

18.

Pursuant to the strict terms of the Consent Judgment, which the parties agreed to and this Court ordered, the Chisom judge assigned to serve on the Supreme Court:

- *Shall receive the same compensation, benefits, expenses, and emoluments of office as are now or as may hereafter be provided by law for justices of the Louisiana Supreme Court.* 1992 Consent Judgment, C(3)
- *[s]hall participate and share equally in the cases, duties, and powers of the Louisiana Supreme Court.* 1992 Consent Judgment, C(4)

- *[s]hall participate and share equally in all other duties and powers of the Supreme Court, including, but not limited to, those powers set forth by the Louisiana Constitution, the laws of Louisiana, and the Louisiana Rules of Court.* Id.

- *shall receive tenure credit for time served as the <u>Chisom</u> judge.* Act 776, Section 2 (incorporated into the 2000 Consent Judgment).

Therefore, Justice Johnson's seniority vested in 1994 when she began her service on the Supreme Court, and exists "hereafter" accruing through the present.

## RELIEF REQUESTED

Justice Johnson is the lawful successor to the position of Chief Justice of the Supreme Court of Louisiana, and has suffered and will continue to suffer hardship, actual and impending irreparable injury, and loss should she be deprived of this position. Justice Johnson is entitled to the position of Chief Justice, pursuant to the express provisions of the Consent Judgment, in that her years of service as the <u>Chisom</u> judge count in terms of her seniority and thus make her the justice with the oldest point of service on the Louisiana Supreme Court.

This action is an actual controversy between the parties having adverse legal interest of such immediacy and reality as to warrant relief. Plaintiff-Intervenor have no adequate remedy at law for the above mentioned conduct of defendants and this Motion is their only means of securing relief from this situation.

Plaintiff-Intervenor Bernette J. Johnson move this court for an Order stating that:

1. Under the terms of the Consent Judgment, Justice Johnson's years as the <u>Chisom</u> judge count toward her seniority on the Louisiana Supreme Court. Thus, she is the *"judge oldest in point of service on the supreme court,"* and would succeed Chief Justice Kimball upon Justice Kimball's retirement.

2. The Court exercises its jurisdiction to reopen this case in order to enforce the terms of the Consent Judgment;

3. Chief Justice Catherine Kimball and Justices Jeffrey Victory, Jeannette Knoll, John Weimer, Greg Guidry, and Marcus Clark of the Louisiana Supreme Court are joined as necessary parties because the Louisiana Supreme Court's Order of June 13, 2012 conflicts with the express terms of the Consent Judgment and

joining the above-named individuals is necessary to fulfill the terms of the Consent Judgment.

4. Chief Justice Kimball and Justices Weimer, Guidry and Clark are held in civil contempt for the following reasons:

   a. The Consent Judgment expressly states that the years Justice Johnson spent as the <u>Chisom</u> judge count as years of service on the Louisiana Supreme Court;

   b. The Justices have notice of the Consent Judgment;

   c. The Louisiana Supreme Court's June 13th Order, which was issued by Chief Justice Kimball on behalf of her and the other three justices, places the Louisiana Supreme Court as the decision making body regarding whether the years Justice Johnson spent as the <u>Chisom</u> judge count as years of service on the Louisiana Supreme Court;

   d. The Justices could have complied with the Consent Judgment by following the Consent Judgment and not instituting a decision making process for determining whether the years Justice Johnson spent as the <u>Chisom</u> judge count as years of service on the Louisiana Supreme Court;

5. Defendants, including the six Justices, are restrained from proceeding under the June 13, 2012 Order, or otherwise from proceeding with the matter entitled *In re: Office of Chief Justice, Louisiana Supreme* Court and the process outlined in Justice Kimball's order, dated June 13, 2012 and/or acting in any way to deprive Justice Johnson of the position of Chief Justice of the Louisiana Supreme Court ;

6. Plaintiff-Intervenor are entitled to an award of costs and attorney's fees; and

Further, Plaintiff-Intervenor requests this Court grant any and all other relief that may be deemed appropriate and equitable in this cause.

Dated: July 5, 2012.

                              Respectfully submitted:

                              **GAUTHIER, HOUGHTALING & WILLIAMS, LLP**

BY: _____
                              JAMES M. WILLIAMS, BAR NO. 26141
                              ALANAH O. HEBERT, BAR NO. 31904
                              3500 N. Hullen Street
                              Metairie, Louisiana 70002
                              504-456-8600 (o)
                              504-456-8624 (f)

                              CLARENCE ROBY, JR. BAR NO. 20345
                              **LAW OFFICE OF CLARENCE ROBY, JR.**
                              3701 Canal Street, Floor 4, Suite U
                              New Orleans, Louisiana 70119
                              504-486-7700 (o)
                              504-486-8005 (f)

                              TRACIE WASHINGTON, BAR NO. 25925
                              **LOUISIANA JUSTICE INSTITUTE**
                              1631 Elysian Fields Avenue
                              New Orleans, Louisiana 70117
                              504-872-9134 (o)
                              504-872-9878 (f)
                              tlwesq@cox.net
                              tracie@LouisianaJusticeInstitute.org

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading has been served upon counsel for all parties via facsimile transmission, electronic mail, hand delivery, or by placing same in the U.S. Mail, postage prepaid and properly addressed, this 5th day of July, 2012.

_____
JAMES M. WILLIAMS