# UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| Ronald Chisom, *et al.* <br><br> Plaintiffs <br><br> v. <br><br> Bobby Jindal, *et al*. <br><br> Defendants | Civil Action: 86-cv-4075-SM/SS |

## MOTION TO DISSOLVE CONSENT DECREE

MAY IT PLEASE THE COURT:

NOW INTO COURT comes the State of Louisiana, through Jeff Landry, in his official capacity as Attorney General of the State of Louisiana, who respectfully moves to dissolve the Consent Decree entered herein pursuant to Fed. R. Civ. P. 60(b) (5) and (6), in light of the Fifth Circuit's opinion making clear that the Consent Decree has accomplished its objectives. (Exhibit A, Fifth Circuit Opinion—*Anthony Allen, et al. v. State of LA, et al.*, 14 F.4th 366 (5th Cir. (9/17/2021).)

1.

Although this motion does not require an independent jurisdictional basis, the State shows that this Court has subject matter jurisdiction over this action based upon a federal question under 28 U.S.C. § 1331, 1343, 1367, and 28 U.S.C. § 2201, 2202, on the grounds that the Attorney General, on behalf of the State, seeks a declaration of rights and terminations of this Court's prior Consent Decree related to election districts for the Louisiana Supreme Court.

1

2.

Venue is proper in this district as to this action pursuant to 28 U.S.C. §1391 and Fed. R. Civ. P. art. 60(b).

3.

Prior to filing this motion, the State notified opposing counsel of its intent to file the Motion to Dissolve Consent Decree. As of the time of filing this motion, the State has not received consent from the other parties with regard to the motion to dissolve.

4.

Given this year's decennial census, the Louisiana Legislature is currently preparing to redraw Louisiana's political districts. The boundaries of the seven Supreme Court districts that resulted from the Consent Decree can no longer be maintained while adhering to traditional redistricting principles. Time and decades of irregularly changing demographics have warped the seven districts into severe malapportionment. For example, District 7 is underpopulated by 188,839. (*See* Exhibit B, Louisiana Legislature Joint Governmental Affairs Committee Meeting Presentation on Redistricting dated September 17, 2021 at pp. 58-62)[1]

5.

The Supreme Court's District 7, however, remains subject to the three-decades old Consent Decree at the heart of this case, which took effect in 1992 and effectively froze the districts after they were redrawn in 1999. (*See* Exhibit C, Consent Decree; *See also* Exhibit D, Amendment to Consent Decree)

---

[1] *See* La Legislature  https://redist.legis.la.gov/2020_Files/MtgFiles/PowerPoint.pdf ; *See also* link to video recordings of the Joint Committee on House and Governmental Affairs and Senate and Governmental Affairs proceedings held on September 17, 2021:
https://house.louisiana.gov/H_Video/VideoArchivePlayer?v=house/2021/sep/0917_21_HG_Joint

6.

This Court has never affirmatively ruled that the Consent Decree has been satisfied, vacated, or terminated. The Consent Decree remains in place, and this Court maintains jurisdiction over it. (*See* Exhibit C, Consent Decree; *See also* Exhibit D, Amended Consent Decree)

7.

As discussed below and in the supporting memorandum, the Consent Decree accomplished what it intended to accomplish, and the final remedy has been implemented.

8.

The Consent Decree resulted in the creation of a single member district that is majority black in voting age population.

9.

The Consent Decree resulted in legislation that provided for reapportionment of the seven districts of the Louisiana Supreme Court in a manner that complied with federal and state voting laws, taking into account the most recent census data at the time the Consent Decree was entered.

10.

Specifically, the Louisiana Legislature passed Act 512 in 1992, which created a temporary eighth Supreme Court seat for the sub-district of Orleans. *See* 1992 La. Acts No. 512, § 1. The August 21, 1992 Consent Decree, memorializing Act 512, provided that the two multi-member districts would be split into two single-member districts upon expiration of the temporary seat and one of those districts would consist of Orleans Parish, making it a minority district. (*See* Exhibit C, Consent Decree)

11.

In 1992, Justice Revius O. Ortique, Jr. won election for the newly created seat on the Louisiana Supreme Court, and he became the first African American on the State's high court. (*See* Exhibit E, Certifications from the Secretary of State relative to Revius O. Ortique, Jr.) Justice Ortique retired upon reaching the age for mandatory retirement under the State Constitution. Thereafter, Justice Bernette Joshua Johnson, also an African American justice, was elected to this seat. (*See* Exhibit F, Certifications from the Secretary of State relative to Justice Bernette Joshua Johnson)

12.

The Consent Decree also required the State to enact "[l]egislation . . . in the 1998 regular session of the Louisiana Legislature" that would "provide[] for the reapportionment of the seven districts of the Louisiana Supreme Court in a manner that complies with the applicable federal voting law, taking into account the most recent census data available." (Exhibit C, Consent Decree at ¶8) It contemplated that "reapportionment" would "provide for a single-member district that is majority black in voting age population that includes Orleans Parish in its entirety." *Id.* And it obligated the State to conduct "future Supreme Court elections . . . in the newly reapportioned districts" beginning "on January 1, 2000." *Id.*; *See also Chisom v. Jindal*, 890 F. Supp. 2d at 703-05 (E.D. La. 9/1/12) (quoting *Perschall v. State*, 96-0322 (La. 7/1/97), 697 So. 2d 240, 245-47 .).

13.

Consistent therewith Act 776 was passed on June 19, 1997 by a vote of 96-0 in the House and on June 3, 1997 by a vote of 38-0 in the Senate. 1997 La. Acts No. 776. It was signed by Governor Mike Foster on July 10, 1997, and it became effective on January 1, 1999 as provided in Article III, Section 18 of the 1974 of the Louisiana Constitution. Subsequent to its passage by

4

the Louisiana Legislature, and in accordance with the requirements of the Consent Decree, the United States Department of Justice precleared this change to the method of electing judges to the Louisiana Supreme Court. (See Exhibit G, Preclearance Letter from the USDOJ)

14.

Justice Bernette Joshua Johnson was re-elected Supreme Court Justice from District 7 in 2000 and in 2010. (*See* Exhibit F, Certifications from the Secretary of State relative to Justice Bernette Joshua Johnson) On February 1, 2013, Justice Johnson was sworn in as Chief Justice of the Supreme Court, and she remained in that position until she retired on December 31, 2020.[2] She was only the second woman to serve as Chief Justice of the Supreme Court. Chief Justice Johnson served the Supreme Court honorably for 26 years. Chief Justice Johnson was honored by her fellow justices and the Supreme Court of Louisiana Historical Society with the naming of the Chief Justice Bernette Joshua Johnson Supreme Court Museum, which is located on the first floor of the Supreme Court courthouse, to carry her legacy forward.[3] Justice Johnson received all the compensation, benefits, expenses, and emoluments of office that every Supreme Court Justice is entitled to under the law.

15.

As recently noted by the United States Court of Appeals for the Fifth Circuit, "[i]n light of those developments, one might think the decree's final remedy has been implemented. But Louisiana has evidently never asked the Eastern District to vacate the decree." *Anthony Allen, et al. v. State of LA, et al.*, 14 F.4th 366, 374 (5th Cir. 9/17/2021); (See Exhibit A, Fifth Circuit ruling at p. 13)

---

[2] La. S.Ct. https://www.lasc.org/Press_Release?p=2020-41
[3] La. S.Ct. https://www.lasc.org/Press_Release?p=2020-41

16.

After the retirement of Justice Johnson, in 2020, Justice Piper D. Griffin, an African American, was elected to serve as a Supreme Court Justice for District 7. (*See* Exhibit H, Certifications from the Secretary of State relative to Justice Piper D. Griffin) Justice Griffin's term will expire December 31, 2030. Therefore, the next election for District 7 will be in 2030.

17.

With receipt of the recent census data, it is clear that District 7, as well as other districts for the Louisiana Supreme Court are severely malapportioned.  (See Exhibit B, Louisiana Legislature Joint Governmental Affairs Committee Meeting Presentation on Redistricting, dated September 17, 2021 at pp. 58-62)[4]

18.

Louisiana's elected representatives need the flexibility to reapportion the State's Supreme Court districts appropriately and in a way that complies with all applicable federal and state law.

19.

With redistricting and reapportionment appearing imminent, the State does not want a situation where Supreme Court districts are treated unevenly in terms of legislation, redistricting, and precinct changes because of the Consent Decree.  Nor does the State want a situation where voters and candidates in the various Supreme Court Districts will be arbitrarily, unequally, and unfairly treated because of the Consent Decree.

---

[4]  See La Legislature  https://redist.legis.la.gov/2020_Files/MtgFiles/PowerPoint.pdf
https://house.louisiana.gov/H_Video/VideoArchivePlayer?v=house/2021/sep/0917_21_HG_Joint

20.

Under the current Supreme Court map District 7, because the judicial districts are now malapportioned due to population and demographic changes, the voting strength of voters in one district is considerably greater that the voting strength of voters in another district in violation of the one man, one vote principle that is fundamental to fair elections.

PRAYER FOR RELIEF

WHEREFORE, the State of Louisiana prays that the Court reopen *Chisom, et al. v. Bobby Jindal, et al*., 86-cv-4075-SM/SS, and grant the State of Louisiana relief from the Judgment and Consent Decree entered in *Chisom* as follows:

    A.    Ordering that final remedy has been implemented in this case;

    B.    The State of Louisiana is no longer bound by the Consent Decree entered herein;

    C.    Terminating and Dissolving the Consent Decree; and

    D.    For such other relief as the Court deems equitable and proper.

RESPECTFULLY SUBMITTED,

**JEFF LANDRY**
ATTORNEY GENERAL

/s/ Jeffrey M. Wale
Jeffrey M. Wale (La. Bar Roll No. 36070)
Angelique Duhon Freel (La. Bar Roll No. 31017)
Carey T. Jones (La Bar Roll No. 07474)
Assistant Attorneys General
Elizabeth Murrill (La. Bar Roll No. 20685)
Solicitor General
Shae McPhee (La. Bar Roll No. 38565)
Deputy Solicitor General
Louisiana Department of Justice
Civil Division
P. O. BOX 94005
Baton Rouge, Louisiana 70804-9005
Telephone: (225) 326-6040
Facsimile: (225) 326-6098

Email: walej@ag.louisiana.gov
freel@ag.louisiana.gov
jonescar@ag.louisiana.gov
murrille@ag.louisiana.gov
mcphees@ag.louisiana.gov

*Counsel for the State of Louisiana*

## **CERTIFICATE OF SERVICE**

I do hereby certify that, on this 2nd day of December 2021, the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system, which gives notice of filing to all counsel of record. Counsel not enrolled in the CM/ECF system were served via U.S. mail.

/s/ Jeffrey M. Wale